UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-25031-CIV-ALTONAGA/Reid

**AROMA360 LLC**, *et al.*,

    Plaintiffs,

v.

**SCENTIMENT, LLC**,

    Defendant.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Plaintiffs, Aroma360 LLC and Hotel Collection LLC's [*Daubert*] Motion [ECF No. 66] ("Pls.' Mot."); and Defendant, Scentiment, LLC's Omnibus *Daubert* Motion [ECF No. 67] ("Def.'s Mot."). Plaintiffs and Defendant filed their respective Responses [ECF Nos. 74, 75], followed by Replies [ECF Nos. 92, 96]. The Court has reviewed the parties' submissions, the record, and applicable law.

**I. BACKGROUND**

*Procedural Background.* Plaintiffs and Defendant are businesses that sell scent-related products. (*See generally* Compl. [ECF No. 1]). Plaintiffs allege Defendant engaged in unfair competition by using the name "Hotel Collection" and associated logos (collectively, the "Hotel Collection Mark" or the "Mark") that Plaintiffs use to promote and sell their products. (*See id.* ¶¶ 9–41).

Plaintiffs assert three claims for relief[1] based on unfair competition in violation of: the

---

[1] Plaintiffs initially asserted four claims, including trademark infringement under the Lanham Act (Count I). (*See generally* Compl.). On November 19, 2025, the Court issued an Order [ECF No. 113] granting summary judgment for Defendant on Count I and narrowing the remaining claims. (*See generally* Nov. 19, 2025 Order).

Lanham Act, 15 U.S.C. section 1125(a) (Count II); the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. section 501.201 *et seq.* (Count III); and Florida common law (Count IV). (*See id.* ¶¶ 53–72). Defendant raises several affirmative defenses, including that Plaintiffs do not have enforceable rights to the Hotel Collection Mark, which is "an invalid, descriptive trademark, lacking distinctiveness, acquired distinctiveness, or secondary meaning"; and a counterclaim seeking a declaratory judgment that the Hotel Collection Mark is not protected. (Ans. [ECF No. 31] 9);[2] *see also Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 782–83 (11th Cir. 2020) (explaining that federal trademark protection is available only to a mark that is inherently distinctive; or that has acquired distinctiveness over time, such as when a mark becomes associated with a particular source and thus takes on a widely understood "secondary meaning" (citations omitted)).

**The Experts and Motions.** Each side retained several experts who prepared reports focused variously on whether the Hotel Collection Mark is protected; whether Defendant engaged in unfair competition by using the Mark; and the extent of any damages Plaintiffs have sustained.

Defendant's proposed experts include (1) David K. Friedland, a trademark attorney who would testify that the Hotel Collection Mark is not distinctive because it has not acquired secondary meaning; (2) Brian M. Sowers, a market researcher who would likewise assert that the Mark lacks secondary meaning; and (3) university marketing professor Dr. Himanshu Mishra, who concludes Defendant's use of the Mark was unlikely to cause consumer confusion and thus did not constitute unfair competition. (*See generally* Pls.' Mot., Ex. 1, Expert R. of David K. Friedland ("Friedland's R.") [ECF No. 66-1]; Pls.' Mot., Ex. 2, Expert R. of Brian M. Sowers ("Sowers's R.") [ECF No. 66-2]; Pls.' Mot., Ex. 3, Expert R. of Dr. Himanshu Mishra ("Mishra's

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

R.") [ECF No. 66-3]); *see also Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (explaining that to prevail on a claim of unfair competition under the Lanham Act, a plaintiff must prove the defendant's use of a mark was likely to cause consumer confusion (citations omitted)); *ThermoLife Int'l, LLC v. Vital Pharmaceuticals Inc.*, No. 19-cv-61380, 2020 WL 6781749, at *2 (S.D. Fla. Nov. 18, 2020) (discussing the consumer confusion requirement for an unfair competition claim under Florida law (citation omitted)).

Plaintiffs' proposed experts include (1) financial advisor David A. Haas, who estimates the monetary damages Plaintiffs sustained from Defendant's use of the Mark; (2) intellectual property attorney Leslie J. Lott, who rebuts Friedland's conclusion that the Mark is not distinctive; and (3) university marketing professor Dr. Wayne D. Hoyer, who responds to Sowers's and Dr. Mishra's Reports. (*See generally* Def.'s Notice of Filing . . . [ECF No. 68], Ex. 9, Expert R. of David A. Haas ("Haas's R.") [ECF No. 68-10]; Def.'s Notice of Filing, Ex. 1, Rebuttal R. of Leslie J. Lott ("Lott's R.") [ECF No. 68-2]; Def.'s Notice of Filing, Ex. 5, Rebuttal R. of Dr. Wayne D. Hoyer ("Hoyer's R.") [ECF No. 68-6]).

The parties challenge the admissibility of the experts' testimony. (*See generally* Pls.' Mot.; Def.'s Mot.). Plaintiffs argue that Friedland offers unsubstantiated legal conclusions based on faulty data (*see id.* 10–20); Sowers relies on a consumer survey of an overbroad population (*see id.* 20–21, 24–27); and Dr. Mishra relies on surveys that were prepared using flawed methodology (*see id.* 20–27). Defendant contends Haas's damages calculation is not based on reliable facts or data (*see* Def.'s Mot. 13–22);[3] Lott's opinions are misleading and untimely (*see id.* 4–9); and Dr.

---

[3] Defendant also asserts that certain "damages claims should be excluded" because Plaintiffs "failed to establish evidentiary support for" those categories of damages. (Def.'s Mot. 13–14). Because this argument does not concern the admissibility of expert testimony, the Court does not address it. *See, e.g., Roland Corp. v. inMusic Brands, Inc.*, No. 17-cv-22405, 2022 WL 22907229, at *1 n.1 (S.D. Fla. Sep. 23, 2022) (discussing the purpose of a *Daubert* motion (citations omitted)).

Hoyer employs unreliable methodologies and data (*see id.* 9–13).

## II.  LEGAL STANDARD

The Federal Rules of Evidence govern the admissibility and proper scope of expert testimony.  Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . :
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (alteration added).

An expert may rely on "facts or data in the case that the expert has been made aware of or personally observed" — even if otherwise inadmissible — "[i]f experts in the particular field would reasonably rely on those kinds of facts or data[.]" *Id.* R. 703 (alterations added).  In addition, an expert's opinion may "embrace[] an ultimate issue" of fact, but it may not offer legal conclusions.  *Id.* R. 704 (alteration added); *see also Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("An expert may not, however, merely tell the jury what result to reach." (citation omitted)).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 requires district courts to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  509 U.S. 579, 597 (1993).  Courts must perform this "'gatekeeping'" function no matter how scientific, technical, or specialized the evidence.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 589 n.7,

4

597; citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)). "This function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Id.* (emphasis, alteration, quotation marks, and citation omitted).

### III. DISCUSSION

The Court begins by addressing Plaintiffs' Motion and then considers Defendant's Motion. Upon review, the Court concludes that both Motions are due to be denied, except to the extent that Plaintiffs challenge proposed testimony offering legal conclusions.

***Plaintiffs' Motion.*** Plaintiffs raise objections to the data and methodologies underlying Defendant's experts' opinions. For example, Plaintiffs assert that Friedland improperly bases his assessment of third-party usage of the Mark on "a trademark search report performed by a third party[,]" which Plaintiffs view as an unreliable source. (Pls.' Mot. 17 (alteration added)). According to Plaintiffs, the survey discussed in Sowers's Report is overbroad, as it uses data from adults who purchased any scent-related product, rather than focusing on Plaintiffs' "*luxury* home-scenting market[.]" (*Id.* 25 (emphasis and alteration added)). Plaintiffs critique Dr. Mishra's use of a survey format known as "Eveready[,]" asserting it is appropriate only for "top-of-mind" (universally recognizable) brands unlike Hotel Collection, yielding "artificially low[] confusion scores" in Dr. Mishra's Report. (*Id.* 21–22 (alterations added)).

These criticisms are not grounds for excluding expert testimony. *See, e.g.*, *Mcgarity v. FM Carriers, Inc.*, No. cv-410-130, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) (citations omitted). Rather, they are best addressed at trial, as "the identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination[.]" *Id.* (alteration added; citations omitted); *see also Coquina Invs. v. Rothstein*, No. 10-60786-Civ, 2011 WL 4949191, at

5

*8 (S.D. Fla. Oct. 18, 2011) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." (quotation marks omitted; quoting *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955–56 (8th Cir. 2007))); *cf. Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) ("[I]n most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." (alteration added; quotation marks and citation omitted)).[4]

Plaintiffs also advance a separate argument: Friedland should be precluded from testifying because he offers legal conclusions disguised as expert opinions. (*See* Pls.' Mot. 10–20). While an expert may provide an opinion on an ultimate issue of fact, testimony regarding "the legal implications of conduct" is impermissible; "the court must be the jury's only source of law." *Montgomery*, 898 F.2d at 1541 (citations omitted). To protect the Court's "exclusive prerogative" to "charg[e] the jury regarding the applicable law[,]" the Court "must remain vigilant against the admission of legal conclusions[.]" *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1129 (11th Cir. 2018) (alterations added; quotation marks and citation omitted).

Plaintiffs are correct that Friedland presents legal conclusions. (*See generally* Friedland's R.). In the Report, Friedland asserts that the Mark has not acquired secondary meaning and "therefore [is] not eligible for common law trademark protection." (*Id.* ¶ 81 (alteration added); *see also id.* ¶¶ 11, 86). While secondary meaning can be a factual question, *see, e.g.*, *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1084 (11th Cir. 2016) (citation omitted), Friedland

---

[4] Plaintiffs also contend that the trademark search report appearing in Friedland's Report does not demonstrate any third-party use, and that Friedland does not adequately explain his methodology. (*See* Pls.' Mot. 16–19). These, too, are matters for cross-examination. *Cf. Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 844 (11th Cir. 1983) (holding that any technical flaws in a survey went to weight rather than admissibility (citations omitted)).

appears to reach his opinion regarding secondary meaning by merely applying case law to Sowers's survey (*see, e.g.*, Friedland's R. ¶ 81 ("In view of the existing case law evaluating secondary meaning survey evidence, Mr. Sowers'[s] survey result . . . supports my opinion that [the Mark has] not achieved secondary meaning[.]" (alterations added)); *see also id.* ¶¶ 43–57 (citations omitted)). Moreover, whether a mark is "eligible for" protection is a question of law. (*Id.* ¶ 81); *see, e.g.*, *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010) (explaining that proof of a valid, protectable trademark is an element of a claim under the Lanham Act); *NBA Props., Inc. v. Dahlonega Mint, Inc.*, 41 F. Supp. 2d 1341, 1347 (N.D. Ga. 1998) (concluding as a matter of law that the plaintiffs' marks were "worthy of protection").

Certainly, Friedland's "legal analysis of the facts" is inadmissible. *United States v. Bradley*, No. 405-cr-059, 2006 WL 8429691, at *4 (S.D. Ga. Feb. 20, 2006) (citations omitted). Plaintiffs' Motion is thus granted to the extent Defendant may seek to have Friedland "present opinions concerning the application of the law to the facts" — including any case law-based commentary about the legal significance of Sowers's survey, and any ultimate statement as to whether the Hotel Collection Mark is a valid, protectable mark. *In re Rosenberg*, No. 09-13196, 2012 WL 3870351, at *1 (Bankr. S.D. Fla. Sep. 6, 2012) (citations omitted).

At any rate, the Court is not persuaded that Friedland is only able to offer impermissible legal conclusions. For instance, testimony analyzing or summarizing the trademark search report Friedland commissioned would not be precluded by the rule against legal conclusions (*see, e.g.*, Friedland's R. ¶¶ 82–83; Def.'s Resp. 17 (citing *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 133 (S.D.N.Y. 2022))); nor would Friedland's independent research conducted to supplement the search report's findings be precluded (*see id.* ¶ 69). Friedland's proposed testimony also draws from the U.S. Patent and Trademark Office's ("USPTO['s]") analyses of

"Plaintiffs' three pending applications to register" the Hotel Collection Mark (Friedland's R. ¶ 71) — and Plaintiffs do not contend that Friedland is unqualified to testify about USPTO applications and practices. (*See, e.g.*, Pls.' Mot. 15 (conceding Friedland possesses expertise in trademark law)).

Consequently, Plaintiffs' Motion is granted only insofar as Friedland — and indeed, any expert — may not offer legal conclusions. *See Montgomery*, 898 F.2d at 1541 (citations omitted).

***Defendant's Motion.*** As with Plaintiffs, Defendant concentrates its *Daubert* objections on the data underlying Plaintiffs' experts' opinions. For example, Defendant seeks to exclude Haas's calculation of lost profits because Haas adopts Plaintiffs' as-yet-unproven allegations of consumer confusion; extrapolates from anecdotal reports to a larger sample size; and "ignores other, significant factors that influence consumer purchasing decisions." (Def.'s Mot. 16).[5] Defendant contends Dr. Hoyer neglected to investigate discount stores in assessing the target market for Hotel Collection products; and if he had done so, "he would have discovered facts that contradict his conclusion[.]" (*Id.* 10 (alteration added)). Lott's opinions are likewise unreliable, Defendant insists, because she relied on "a stack of communications to review [provided] by Plaintiffs' counsel" and "did not investigate the source of the documents[.]" (*Id.* 7 (alteration added)).

---

[5] Defendant also objects to Haas's proposed testimony on the ground that he applies an "incorrect" legal standard. (Def.'s Mot. 14 (citing *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375 (10th Cir. 1977))). As Defendant notes, Haas cites *Big O* in asserting that the proper measure of corrective damages — the amount required to "correct false impressions as to the source of [Plaintiffs'] products in the marketplace" — consists of 25% of the amount "spent by [Defendant] on consumer-facing advertising[.]" (Haas's R. ¶¶ 58, 63 (alterations added; citation and footnote call number omitted); *see also* Def.'s Mot. 14–15). Defendant contends Haas's corrective damages calculation is incorrect because "*Big O* has not been adopted by the Eleventh Circuit." (Def.'s Mot. 14 (quotation marks and citation omitted)).

The Court is not persuaded that Haas applies an incorrect damages standard. Defendant does not contend the Eleventh Circuit has *rejected* the approach, approved in *Big O*, of calculating corrective damages based on 25% of a defendant's advertising spend. (*See generally* Def.'s Mot.); *Big O*, 561 F.2d at 1375. And as Haas notes, that approach is grounded in a Federal Trade Commission practice of "requiring businesses that publish misleading advertisements to pay 25% of their advertising budget on corrective advertising." (Haas's R. ¶ 60 (citations and footnote call number omitted)); *Big O*, 561 F.2d at 1374.

Case 1:24-cv-25031-CMA   Document 118   Entered on FLSD Docket 12/04/2025   Page 9 of 11

CASE NO. 24-25031-CIV-ALTONAGA/Reid

Because these arguments challenge the reliability of the data underlying Haas's, Dr. Hoyer's, and Lott's opinions, they bear on weight rather than admissibility. *See Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341 (citations omitted); *Rosenfeld*, 654 F.3d at 1193 (citations omitted). The Court will not "usurp the jury's role" in evaluating the persuasiveness of these experts' anticipated testimony. *Ins. House, Inc. v. Ins. Data Processing, Inc.*, No. 07-cv-0286, 2009 WL 10670469, at *10 (N.D. Ga. Feb. 12, 2009) (citation omitted), *aff'd*, 367 F. App'x 1 (11th Cir. 2010).

Defendant also argues that parts of Lott's Report are untimely. (*See* Def.'s Mot. 4–6). Plaintiffs disclosed Lott's Report after the deadline to exchange affirmative expert reports had passed. (*See id.* 4; Sched. Order [ECF No. 25] 1). While Plaintiffs label Lott's Report a rebuttal report, Defendant insists certain sections include affirmative opinions about Plaintiffs' prima facie case and that Lott should be precluded from testifying about those opinions. (*See* Def.'s Mot. 4).

Parties must disclose expert reports, including rebuttal reports, "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A rebuttal report may offer evidence "intended solely to contradict or rebut evidence on the same subject matter identified by" the expert report it rebuts. *Id.* R. 26(a)(2)(D)(ii). And "a rebuttal opinion should not be used to advance new arguments or present new evidence." *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687-Civ, 2018 WL 3583002, at *2 (S.D. Fla. July 26, 2018) (citation omitted).

But a rebuttal report does not violate this standard simply because it "contains new information[.]" *GLF Constr. Corp. v. Fedcon Joint Venture*, No. 17-cv-1932, 2019 WL 13168545, at *6 (M.D. Fla. Oct. 16, 2019) (alteration added; citations omitted). Ultimately, courts are "empowered to exercise their discretion and judgment in determining if a rebuttal expert report addresses the same subject matter as the opposing party's initial expert report." *Healy v. NCL*

9

*(Bahamas) Ltd.*, No. 23-cv-21306, 2024 WL 4132981, at *6 (S.D. Fla. Aug. 13, 2024) (quotation marks and citation omitted).

Lott's Report is proper rebuttal to Friedland's Report. (*See generally* Lott's R.; Friedland's R.). As explained, Friedland asserts that the Hotel Collection Mark is not distinctive and does not qualify for protection because it has not acquired secondary meaning. (*See generally* Friedland's R.). He also maintains that should a factfinder conclude the Hotel Collection Mark is distinctive, the scope of protection should be narrow because third parties have used the Mark. (*See generally id.*). Lott responds point-by-point. (*See* Lott's R. 3–30). Naturally, because Friedland analyzes elements of Plaintiffs' claims, Lott likewise discusses Plaintiffs' prima facie case; in other words, Lott rebuts Friedland's conclusions about the "same subject matter" Friedland discusses. Fed. R. Civ. P. 26(a)(2)(D)(ii); (*see* Lott's R. 3–30).

True, Lott addresses one issue Friedland does not: she faults Friedland for failing to discuss "suggestiveness" and implies the Hotel Collection Mark is suggestive rather than merely descriptive, making it distinctive without a showing of secondary meaning. (Lott's R. 8–10; *see generally* Friedland's R.); *see also Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1188 (11th Cir. 2011) (citation omitted). But this section of Lott's Report does not "advance [a] new argument[.]" *Lebron*, 2018 WL 3583002, at *2 (alterations added). Lott addresses suggestiveness to critique Friedland's failure to do so — and to rebut Friedland's assertion that the Hotel Collection Mark is descriptive. (*See* Lott's R. 8–10). *See, e.g.*, *Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1267 (N.D. Fla. 2016) (discussing the difference between a descriptive mark and a suggestive mark (citation and footnote call number omitted)).[6]

---

[6] Moreover, whether the Hotel Collection Mark is suggestive is not a truly distinct topic from whether it is descriptive, as the distinction between the two is "more blurred than it is definite." *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1522 (11th Cir. 1991) (footnote call number omitted).

CASE NO. 24-25031-CIV-ALTONAGA/Reid

In sum, Defendant fails to persuade that any of Plaintiffs' experts should be precluded from testifying.

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs, Aroma360 LLC and Hotel Collection LLC's [*Daubert*] Motion **[ECF No. 66]** is **GRANTED in part and DENIED in part**. Defendant, Scentiment, LLC's Omnibus *Daubert* Motion **[ECF No. 67]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 4th day of December, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record